580 P.2d 19

**M. J. W. THEATRICAL ENTERPRISES, INC., an Arizona Corporation, Appellant,**

v.

**Helen Gold KILLEEN and Lola Gold Barrious, Appellees.**

**No. 1 CA–CIV 3631.**

Court of Appeals of Arizona, Division 1, Department B.

June 6, 1978.

188

Hughes & Hughes, P. C. by Coit I. Hughes, Phoenix, for appellant.

Lewis & Roca by Gerald K. Smith, Paul G. Ulrich, Richard N. Goldsmith, Phoenix, for appellees.

## OPINION

JACOBSON, Judge.

This is an appeal from summary judgment entered in a forcible detainer action. The trial court found that the lessee failed to exercise an option to renew its lease and was not entitled to continue in possession of the leased premises. We agree.

In 1965, appellees Helen Gold Killeen and Lola Gold Barrious (lessors) entered into a written lease as lessors with M. J. W. Theatrical Enterprises, Inc., an Illinois corporation. This comprehensive lease agreement covers a theater located in Phoenix, Arizona and provides for a five year term, commencing on January 1, 1966 and ending on December 31, 1970. It grants M. J. W. an option to extend the lease for an additional five years upon the same terms with the exception that the monthly rental would increase from $250.00 to $350.00 for the additional term. The option clause also provides that written notice of the exercise of the option is to be sent by registered mail to Helen Gold Killeen "not more than 90 days prior to the termination of the initial lease of five (5) years."

The lease was assigned to the appellant, M. J. W. Theatrical Enterprises, Inc., an Arizona corporation (M. J. W.) in 1970. Subsequently, as a result of a dispute over the repair and maintenance of the property, M. J. W. filed suit against the lessors. This litigation was settled between the parties by the execution in 1971 of an "Agreement and Option" and the dismissal of the lawsuit. The 1971 document first recites that the parties to the agreement are lessors and lessee in connection with the 1965 lease and that in order to resolve their differences have agreed: that the lessee "had exercised its option under said lease" for five years; that the lessee "may have an option to renew said lease for an additional period of ten (10) years" at a rental of $500.00 per month; that the lessee shall have possession of certain premises "excepted from said original lease"; and that the lessee shall perform all repair obligations stated "in its original lease" except as to walls. As a result of this agreement, M. J. W. was entitled to possession of the theater until December 31, 1975 with an option to renew for an additional ten years.

M. J. W.'s tenancy continued uneventfully until September, 1975 when it sought to modify the agreement by offering to exercise the ten year option if the monthly rental were reduced to $300.00. Discussions between the parties ensued until finally, counsel for the appellees informed M. J. W. by letter that no adjustments would be made in the rent. The letter stated, ". . . if your client does desire to exercise the option, it will have to be on the basis of the option and the lease as written."

M. J. W. took no action to exercise its option prior to the expiration of its lease, but mailed a check for $500.00 to Helen Gold Killeen in an envelope postmarked January 5, 1976. This check was returned. The check was re-submitted and again returned. On both occasions, a cover letter demanding possession of the premises accompanied the returned check. M. J. W. refused to vacate the theater. On January 22, 1976, the appellees filed a forcible detainer action and summary judgment was entered in their favor on March 8, 1976.

M. J. W. has changed its position on appeal from the posture taken before the trial court. The record shows that M. J. W.'s main contention in the trial court was that the terms of the 1965 lease and 1971 agreement were fulfilled.[1] However, on appeal, M. J. W. now asserts that the 1971 agreement must be construed as an entirely separate lease which supersedes the 1965 lease, and as such contains no requirements as to the time and manner in which to exercise the option to renew. This new position is also totally inconsistent with M. J. W.'s position in November, 1975 when it filed a breach of contract action against appellees based in part on the 1965 lease.

M. J. W. argues that the option clause in the 1971 agreement controls its rights to renew. This clause provides:

"3. It is agreed that Lessee may have an option renew said lease for an additional period of ten (10) years after the expiration of the first option, provided, however, that for said additional 10-year period said Lessee shall pay to Lessors the sum of Five Hundred Dollars ($500.00) per month, as and for the rental of said premises."

M. J. W. construes this clause to mean that the option could not be exercised until *after* the expiration of the first option and that the proper manner of exercising the option was to pay $500.00 to the lessors. The argument continues that as a consequence of tendering $500.00 to the appellees on January 5, 1976, M. J. W. had timely exercised its option.

As its fall-back position, M. J. W. contends that this clause is ambiguous and that factual disputes exist as to the proper time for exercising the option which preclude summary judgment.

M. J. W.'s arguments are viable *only* if we first accept the premise that the 1971 agreement supersedes the 1965 lease. The 1971 agreement is replete with references to the 1965 lease as a continuing operative arrangement between M. J. W. and the lessors. In fact, without the 1965 lease it would be impossible to determine from the 1971 agreement either the term of the lease or the allocation of duties between the parties. The tenor of the 1971 agreement, from its initial recital that a lessor-lessee relationship exists because of the 1965 lease to five other express references to the 1965 lease, including the option clause itself, indicates that the 1971 agreement is intended as a modification of the original lease.

Furthermore, no facts were presented to the trial court to show that the 1971 lease was the sole operative lease agreement. Appellant cannot now attempt to raise a question of fact by taking a different position on appeal. *See, McClennen v. McClennen,* 11 Ariz.App. 395, 464 P.2d 982 (1970). *Cf. Sailes v. Jones,* 17 Ariz.App. 593, 597, 499 P.2d 721, 725 (1972); *Mecham v. City of Glendale,* 15 Ariz.App. 402, 404, 489 P.2d 65, 67 (1971). We find appellant's argument that the terms of the 1965 lease were not in effect to be wholly without merit.

The trial court was entitled to examine both documents and read them together as a matter of law. *See, Brewster-Greene v. Robinson,* 34 Ariz. 547, 273 P. 538 (1929). There were uncontradicted affidavits from both lessors that they never received written notification from M. J. W. of its intention to extend the lease. The trial court correctly held that as a matter of law M. J. W. had failed to comply with the provisions of the 1965 lease requisite to exercising its option.

In view of the complete change of position by M. J. W. from its stance before the trial court and on appeal and in view of the obvious integrated relationship between the 1965 lease and the 1971 agreement and the complete lack of a factual issue as to that interpretation, it is the opinion of this court that this appeal was wholly frivolous and

---

1. An affidavit of Dwain Esper, President of M. J. W., made in opposition to appellees' motion for summary judgment claims that he had exercised the option ". . . for a ten (10) year term pursuant to the Lease of November 16, 1965, Clause 10, p. 4 . . . .."

taken solely for the purpose of delay. We are also of the opinion based upon the promulgation order of the Arizona Supreme Court as to the new Rules of Appellate Procedure, effective January 1, 1978, that the measure of frivolous appeal damages is controlled by the statute in effect prior to January 1, 1978.

Pursuant to A.R.S. § 12–2106, we hereby award the sum of $500.00 to appellees to be paid by appellant as and for a penalty for taking a frivolous appeal. This item is to be a taxable cost on appeal upon issuance of our mandate. Judgment affirmed.

EUBANK, P. J., and OGG, J., concurring.