NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARK REZAIK aka JALIL R. KHIABANLOU, a single man,
*Plaintiff/Appellee/Cross-Appellant*,

*v.*

FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona
corporation, *Defendant/Appellant/Cross-Appellee.*

No. 1 CA-CV 14-0697
FILED 6-14-2016

Appeal from the Superior Court in Maricopa County
No. CV2012-008267
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Raymond, Greer & Sassaman, P.C., Phoenix
By Randy L. Sassaman
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Donald L. Myles, Jr., Ashley V. Halvorson, Jennifer B. Anderson
*Counsel for Defendant/Appellant/Cross-Appellee*

<hr>

## MEMORANDUM DECISION

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Maurice Portley joined and Judge Patricia K. Norris specially concurred.

<hr>

**T H O M P S O N**, Presiding Judge:

**¶1** Farmers Insurance Company of Arizona (Farmers) appeals from the trial court's denial of its motions for judgment as a matter of law and for a new trial after a jury awarded Mark Rezaik (Rezaik) damages on his claims for breach of contract and bad faith after Farmers denied his insurance claim. Rezaik cross-appeals, arguing that the trial court erred in granting partial summary judgment to Farmers on his claim for punitive damages. For the following reasons, we affirm the decision of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** Rezaik was insured by a Farmers homeowner's insurance policy in August 2011 when his home in Scottsdale was burglarized. The policy provided personal property coverage in the amount of $271,500. Rezaik submitted claims totaling approximately $160,000 to Farmers for damage to his residence caused by forced entry and for loss of his personal property. Farmers denied the claim for loss of personal property, alleging that Rezaik had made material misrepresentations concerning that claim.

**¶3** Rezaik filed a complaint and amended complaint in superior court asserting claims for breach of contract and bad faith. He sought compensatory damages, punitive damages, and attorneys' fees. Farmers moved for summary judgment, arguing that Rezaik should be judicially estopped from asserting claims on values of his personal property significantly higher than values he had previously listed in bankruptcy schedules filed with the United States Bankruptcy Court in 2007 and 2010.[1] The trial court denied the motion for summary judgment. Farmers subsequently filed a renewed motion for summary judgment as to the

<hr>

[1] In his 2007 bankruptcy, Rezaik disclosed $4220 in personal property, besides vehicles. In his 2010 bankruptcy, which was dismissed, he disclosed $4500 in personal property.

issues of bad faith and punitive damages. The trial court denied the renewed motion for summary judgment as to bad faith, but granted the motion as to punitive damages. The case proceeded to a jury trial.

¶4          After both sides presented their cases to the jury[2], Farmers moved for judgment as a matter of law on both counts based on judicial estoppel. The trial court denied the motion. On December 6, 2013, the jury found in Rezaik's favor on the breach of contract claim and awarded him $171,450.00. The jury further found in his favor on the bad faith claim and awarded him $100,000.00 on that claim. On December 18, 2013, the trial court entered findings of fact and conclusions of law on the issue of judicial estoppel, finding that Rezaik was not judicially estopped from recovering benefits under the insurance contract.[3] The trial court entered judgment for Rezaik in March 2014.

¶5          In April 2014, Farmers filed a renewed motion for judgment as a matter of law based on judicial estoppel pursuant to Arizona Rule of Civil Procedure 50(b) (Rule 50(b)). Farmers also filed, in the alternative, an amended renewed motion for judgment as a matter of law regarding judicial estoppel and joint motion for a new trial under Arizona Rule of

---

[2] At trial, Farmers cross-examined Rezaik about his Chapter 7 and Chapter 13 bankruptcy petition schedules.

[3] The court noted that its ruling did not preclude action in bankruptcy court concerning irregularities in Rezaik's bankruptcy schedules or notice to the bankruptcy trustee concerning unlisted and undervalued personal property items. On April 1, 2015, Rezaik filed a motion for judicial notice in this court asking us to take judicial notice of orders from the United States Bankruptcy Court filed on January 15 and January 22, 2015. The January 15 order is an order reopening Rezaik's Chapter 7 bankruptcy proceedings because "the Trustee believes there may be further assets to be administered." The January 22, 2015 order orders Rezaik to present to the bankruptcy court the "[c]omplete file on the insurance claim at issue in the case pending in the Maricopa County Superior Court Case No. CV2012-008267 (this case)," and to submit to an oral examination. Farmers objected to the April 2015 motion for judicial notice, arguing that the orders are irrelevant. Rezaik filed a second motion for judicial notice on March 18, 2016, asking us to take judicial notice of a third bankruptcy order authorizing the trustee in the bankruptcy case to employ Rezaik's attorney as special counsel. Although not material to our analysis, we take judicial notice of the bankruptcy orders.

Civil Procedure 59(a) (Rule 59(a)). The trial court treated the renewed motion for judgment as a matter of law regarding judicial estoppel as a joint motion for new trial under Rule 59(a) and denied both motions. Farmers timely appealed and Rezaik timely cross-appealed.[4] We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) § 12-2101(A)(1), (2), and (5)(a) (2016).

## DISCUSSION

### A. The Trial Court Did Not Abuse its Discretion By Declining to Apply Judicial Estoppel

**¶6**           Farmers raises one issue on appeal: whether the trial court erred by failing to apply judicial estoppel to bar Rezaik's claims. We review a trial court's decision whether to apply judicial estoppel for an abuse of discretion. *See State v. Brown*, 212 Ariz. 225, 228, ¶ 13, 129 P.3d 947, 950 (2006) (because judicial estoppel is an equitable concept, its application is within the court's discretion and court may exercise its discretion not to apply the doctrine) (citation omitted); *Flood Control Dist. of Maricopa Cty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 41, ¶ 34, 279 P.3d 1191, 1203 (App. 2012) ("Judicial estoppel is a discretionary doctrine which the court may decline to apply for equitable or policy considerations."). *See also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Because [judicial estoppel] is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'") (citation omitted).

**¶7**           Arizona has long recognized the doctrine of judicial estoppel. *State Farm Auto. Ins. Co. v. Civil Serv. Emp. Ins. Co.*, 19 Ariz. App. 594, 599, 509 P.2d 725, 730 (1973). The purpose of the doctrine is to protect the integrity of the judicial process by preventing litigants from using the courts to gain an unfair advantage. *Flood Control*, 230 Ariz. at 41, ¶ 34, 279 P.3d at 1203 (citing *State v. Brown*, 212 Ariz. at 228, ¶ 13, 129 P.3d at 950). "Three requirements must exist before the court can apply judicial estoppel: (1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996); *Flood Control*, 230 Ariz. at 41, ¶ 35, 279 P.3d at 1203 (same). *See also* 28 Am. Jur. 2d *Estoppel and Waiver* § 118 (2016) ("The doctrine of estoppel by record or judicial estoppel generally only applies in

---

[4] On March 17, 2016 Rezaik filed a supplemental citation of legal authority. Farmers filed a response dated March 22, 2016. Because the response contains argument, we strike the response. *See* ARCAP 17(b).

suits between the same parties to the judicial action and their privies though there is contrary authority."). Judicial estoppel should be applied cautiously. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Maricopa Cty.*, 196 Ariz. 173, 175, ¶ 8, 993 P.2d 1137, 1139 (App. 1999) (citation omitted).

**¶8** Here, the trial court declined to apply judicial estoppel to bar Rezaik's insurance claims. Citing the *Towery* requirements, the court noted that, because Farmers was not a party to either bankruptcy proceeding, the parties were not the same and judicial estoppel did not apply. The court further found that it was precluded from applying judicial estoppel because Rezaik's insurance claim was not an asset during either bankruptcy.

**¶9** Farmers argues that we should reject the same party rule set out in *Towery* and numerous opinions of the Arizona Supreme Court as well as this court as dicta. *See State v. Tucker*, 205 Ariz. 157, 164, ¶ 37, 68 P.3d 110, 117 (2003); *In re: Estate of Cohen*, 105 Ariz. 337, 340-41, 464 P.2d 620, 623-24 (1970); *Adams v. Bear*, 87 Ariz. 288, 294, 350 P.2d 751, 755 (1960); *Martin v. Wood*, 71 Ariz. 457, 459, 229 P.2d 710, 711-12 (1951); *Rossi v. Hammons*, 34 Ariz. 95, 102, 268 P. 181, 184 (1928); *In re Marriage of Thorn*, 235 Ariz. 216, 222, ¶ 27, 330 P.3d 973, 979 (App. 2014), *review denied* (Jan. 6, 2015); *Flood Control*, 230 Ariz. at 41, ¶ 35, 279 P.3d at 1203; *Bank of Am. Nat'l Trust*, 196 Ariz. at 175, ¶ 7, 993 P.2d at 1139; *Otis Elevator Co. v. Valley Nat'l Bank*, 8 Ariz. App. 497, 498, 447 P.2d 879, 880 (1968); *DeAlfy Properties v. Pima Cty.*, 195 Ariz. 37, 41, ¶ 10, 985 P.2d 522, 526 (App. 1998) (appellants not parties in prior litigation involving appellee so judicial estoppel did not apply). *But see Mecham v. City of Glendale*, 15 Ariz. App. 402, 404, 489 P.2d 65, 67 (1971) (Div. II of this court affirmed trial court's application of judicial estoppel where parties were not the same in the prior litigation). This court is not in a position to reject a rule expressly set out by the Arizona Supreme Court and we decline to do so even though there is a split of authority in other jurisdictions.

**¶10** Farmers next argues that the trial court erred in declining to apply judicial estoppel in this case because the court erroneously focused on the fact that the insurance claim was not an asset during either of Rezaik's bankruptcies. Given our rejection of Farmers' judicial estoppel argument based on the same party requirement we do not need to address this argument.

**B. The Trial Court Did Not Err in Granting Summary Judgment to Farmers on Punitive Damages**

¶11 In his cross-appeal, Rezaik argues that the trial court erred in granting summary judgment to Farmers on his claim for punitive damages. In reviewing an order on a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App. 1992).

¶12 "[P]unitive damages may not be awarded in a bad faith tort case unless the evidence reflects 'something more' than the conduct necessary to establish the tort." *Rawlings v. Apodaca*, 151 Ariz. 149, 161, 726 P.2d 565, 577 (1986) (citations omitted). The availability of punitive damages in a bad faith case is restricted to "those cases in which the defendant's wrongful conduct was guided by evil motives . . . and . . . when the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent." *Id.* at 162, 726 P.2d at 578 (citations omitted).

¶13 Rezaik alleged that 1) Farmers's claims representatives misrepresented to him that everything was fine and he would be paid as soon as their pricing was complete, 2) Farmers's special investigator tried to trick him into believing she was unaware of the bankruptcies when she took his recorded statement, 3) Farmers misrepresented to him that it needed a an authorization from him to establish coverage and then used the authorization to try to discover evidence to deny coverage, 4) Farmers repeatedly ignored his attorney's requests for information, and 5) Farmers misrepresented to him why his claim was being denied. The trial court found that even if Rezaik's allegations were true, he could not meet his burden of proving by clear and convincing evidence "that [Farmers] acted with an evil mind with conscious disregard that exposed [him] to serious harm." We agree. None of Rezaik's allegations rise to the level of the type of outrageous, malicious conduct required to warrant punitive damages.

## C. Attorneys' Fees

¶14 Both sides request their attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A). In our discretion, we decline to award attorneys' fees.

**CONCLUSION**

¶15  For the foregoing reasons, we affirm the decision of the trial court.[5]

**N O R R I S**, Judge, specially concurring:

¶16  In its opening brief, Farmers argued the superior court should have judicially estopped Rezaik from suing it for breach of contract and bad faith denial of insurance coverage ("insurance claims"). In my view, we do not need to decide whether the superior court should have judicially estopped Rezaik from pursuing these claims. After Farmers filed its opening brief, the bankruptcy court reopened Rezaik's 2007 Chapter 7 bankruptcy case to allow the bankruptcy Trustee to administer additional assets belonging to the bankruptcy estate. These additional assets include the insurance claims and the judgment against Farmers. Given this turn of events, and, as discussed below, even if, as Farmers argues, Arizona law allows judicial estoppel to be "invoked" by a party who is a stranger to the "first litigation" involving his or her adversary, Arizona courts must apply judicial estoppel in a manner consistent with other governing law, which in this case is the federal Bankruptcy Code and well established principles of equity. Under the Bankruptcy Code and equitable principles, Rezaik's bankruptcy Trustee is not judicially estopped from pursuing the insurance claims and collecting the judgment against Farmers.

¶17  On September 9, 2007, Rezaik petitioned for relief under Chapter 7 of the Bankruptcy Code. When he petitioned for bankruptcy relief, Rezaik owned most of the personal property assets ("the insurance assets") that formed the basis of the insurance claims against Farmers. Yet, he failed to list or otherwise disclose the insurance assets in his under oath bankruptcy schedules and associated filings. Thus, although Rezaik owned valuable art, jewelry, collectibles, and rugs when he petitioned for bankruptcy relief, he claimed to own only $4200 in personal property, and denied owning any "art objects, antiques . . . and other collections or collectibles." In due course, the bankruptcy court entered an order discharging Rezaik from $882,541 in unsecured debt, and closed his Chapter 7 bankruptcy case in June 2010.

---

[5] Our concurring colleague reaches the same result by way of consideration of bankruptcy law. While we do not reach the issues raised in the concurrence we certainly agree the bankruptcy trustee is not estopped from seeking to enforce the judgment on behalf of the bankruptcy estate.

¶18        When Rezaik petitioned for Chapter 7 relief, all of the property he then owned—including the insurance assets he had failed to disclose—became property of his bankruptcy estate, and subject to administration by the bankruptcy Trustee.  11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *id.* at § 323(a), (b) (trustee is representative of the estate with capacity to sue and be sued); *id.* at § 704(a)(1) (trustee required to "collect and reduce to money the property of the estate for which such trustee serves").  Property of the bankruptcy estate remains property of the estate until it is either administered or abandoned pursuant to the Bankruptcy Code. 11 U.S.C. § 554. Further, property of the estate that is not disclosed or otherwise administered when the bankruptcy case is closed remains property of the estate forever. 11 U.S.C. § 554(c), (d); *Jeffrey v. Desmond*, 70 F.3d 183, 186 n.3 (1st Cir. 1995) ("any asset not properly scheduled remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name"). And, the Bankruptcy Code expressly authorizes a bankruptcy court to reopen a closed case to administer undisclosed assets. 11 U.S.C. § 350(b). "All of these provisions reflect Congress's clear preference for the preservation of the bankruptcy estate and for its equitable distribution to creditors through the bankruptcy process." *Reed v. City of Arlington*, 650 F.3d 571, 575 (5th Cir. 2011).

¶19        Not only does the bankruptcy estate include all property of the debtor as of the commencement of the case, but it includes proceeds of or from property of the estate. 11 U.S.C. § 541(a)(6). "Proceeds is 'intended to be a broad term to encompass all proceeds of property of the estate.  The conversion in form of property of the estate does not change its character as property of the estate.'" *Bradt v. Woodlawn Auto Workers F.C.U.*, 757 F.2d 512, 515 (2d Cir. 1985) (*quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6324). Thus, when insured property belonging to a bankruptcy estate is damaged or stolen, any payment made by the insurance carrier for that damage or theft becomes proceeds of property of the estate, and thus, property of the estate. *Bradt*, 757 F.2d at 515 (proceeds of an insurance check for post-petition accident repairs made to an automobile that belonged to the debtor at the commencement of his Chapter 7 case constituted property of the bankruptcy estate; "insurance payment for repairs to an automobile [damaged post-petition] that is property of the estate unquestionably is also property of the estate"); *In re Scott Wetzel Servs., Inc.*, 243 B.R. 802, 804-05 (Bankr. M.D. Fla. 1999) ("[C]asualty, fire, or theft insurance proceeds have been held to be property of the estate because the debtor directly receives the proceeds as merely a change in form of estate property."); *In re Asay*, 184 B.R. 265, 266 (Bankr. N.D. Tex. 1995) ("insurance proceeds are a change

in form of estate property"); *In re Jones*, 179 B.R. 450, 454 (Bankr. E.D. Pa. 1995) (insurance proceeds for post-petition damage to debtor's home that debtor owned at commencement of the case constituted property of the estate). Accordingly, when, as here, an insurance carrier does not honor its obligations to indemnify for the theft of property belonging to the bankruptcy estate, claims against the carrier arising out of its failure to honor its indemnity obligations and any judgment on those claims are proceeds of property of the estate, and thus, property of the estate.

¶20 Putting aside whether Rezaik was the proper party to pursue the insurance claims against Farmers (given that the insurance assets belonged to the bankruptcy estate even though he had failed to disclose them in his bankruptcy filings), under the foregoing authorities, the insurance assets and all proceeds from them, including the insurance claims and the judgment against Farmers on those claims, constituted property of the bankruptcy estate. Further, as discussed above, the bankruptcy court was authorized to reopen Rezaik's Chapter 7 case to allow the Trustee to administer the insurance assets and their proceeds. And indeed, in January 2015, after the superior court entered judgment in this matter, the bankruptcy court granted the Trustee's motion to reopen Rezaik's Chapter 7 case to do just that.

¶21 As the majority points out, a party may be judicially estopped when that party successfully asserted an inconsistent position in a prior judicial proceeding. Here, Rezaik represented to the bankruptcy court in his Chapter 7 filings that he had next to no assets. Although at trial, Rezaik attempted to explain his non-disclosure of the insurance assets by asserting he had relied on his lawyer's advice to value them as if they were being sold at a garage sale, the superior court rejected that excuse. Based on more than ample evidence, the superior court found that "the vast difference between the $3000.00 - $4000.00 in personal property claimed in the two bankruptcies,[6] and the $160,000.00 insurance claim, is too great to be

---

[6] Rezaik also petitioned for relief under Chapter 13 of the Bankruptcy Code in October 2010. Rezaik did not list the insurance assets in his under oath bankruptcy schedules and associated filings when he petitioned for Chapter 13 relief. Instead, in his bankruptcy schedules, he claimed to own only $4505 in personal property. He also denied owning any art objects, books, antiques, collections or collectibles, sport or photographic equipment, and jewelry. Yet, the insurance claim he submitted to Farmers in 2011 included $160,000 in personal property including non-exempt clothing, jewelry, rugs, art objects, books, antiques, collections, and

reconciled with any valuation method." Rezaik's failure to disclose the insurance assets was material. As the superior court also found, Rezaik was successful in his Chapter 7 bankruptcy—his "debts were discharged, including over $800,000.00 in unsecured debt," and he "avoided the liquidation of his assets by the trustee."

¶22 But the successful and inconsistent positions taken by Rezaik will not bar the bankruptcy Trustee, on behalf of the bankruptcy estate, from pursuing the insurance claims and collecting the judgment against Farmers. The elements giving rise to judicial estoppel—even assuming mutuality of parties is not required—occurred when Rezaik (not the bankruptcy Trustee) represented to the bankruptcy court that he had next to no assets for distribution, and then when Rezaik (not the bankruptcy Trustee) represented to the superior court that he owned the insurance assets at the time of the theft. The wrongdoer here was Rezaik, not the bankruptcy Trustee. Yet, to bar the Trustee from pursuing the insurance claims and collecting the judgment against Farmers would "thwart one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors—by unnecessarily 'vaporizing' the assets effectively belonging to innocent creditors." *Reed*, 650 F.3d at 576 (*citing Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)).

¶23 As the majority notes, judicial estoppel is an equitable doctrine. The doctrine must be applied flexibly to achieve substantial justice. The victims here are Rezaik's creditors. Estopping the Trustee from pursuing the insurance claims and collecting the judgment would provide Farmers with a windfall. The purpose of judicial estoppel is to protect the integrity of the judicial system by preventing litigants from playing fast and loose with the courts. *See Mecham v. City of Glendale*, 15 Ariz. App. 402, 404, 489 P.2d 65, 67 (1971). Judicial estoppel should not be used to punish

---

collectibles. Eventually, without receiving a discharge and at his request, the bankruptcy court dismissed Rezaik's Chapter 13 proceeding on March 26, 2012. Because the bankruptcy court dismissed his Chapter 13 proceeding, I question whether Rezaik successfully asserted an inconsistent positon in that proceeding as judicial estoppel requires. *Compare Ware v. U.S. Bank Nat. Ass'n*, 131 F. Supp. 573, 576 (S.D. Miss. 2015) (judicial estoppel inapplicable when bankruptcy court dismissed debtors' Chapter 13 bankruptcy case), *with HPG Corp. v. Aurora Loan Servs., LLC,* 436 B.R. 569, 578 (Bankr. E.D. Cal. 2010) (judicial estoppel applicable even though debtors' bankruptcy case dismissed without a discharge because they "enjoyed" benefits from bankruptcy automatic stay). For purposes of this appeal, I do not have to resolve this question.

innocent third parties, such as the Trustee and the creditors of Rezaik's bankruptcy estate. And, it bears emphasizing that Rezaik's misconduct in not disclosing the insurance assets to the bankruptcy court when he petitioned for Chapter 7 bankruptcy relief has not given the Trustee and the bankruptcy estate an unfair advantage over Farmers.

¶24 In *Reed*, the court held that judicial estoppel would not bar a blameless bankruptcy Trustee from pursuing a judgment the debtor had obtained pre-petition against a third-party but then concealed during his Chapter 7 bankruptcy case. 650 F.3d at 572. Although the court agreed the debtor should be judicially estopped from profiting from the judgment because of his dishonesty, the court held that the debtor's post-petition misconduct did not "adhere" to the Trustee. *Id.* at 574-75. Emphasizing the judgment constituted an asset of the bankruptcy estate, and, but for the debtor's dishonesty, would have been administered by the Trustee and used by the Trustee to pay unsecured creditors, the court held that applying judicial estoppel to bar the Trustee from collecting the judgment would be inequitable. The court explained:

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [tort] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the [district court's decision to apply judicial estoppel]. *Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.*

*Id.* at 576 (*quoting Biesek,* 440 F.3d at 413) (emphasis in original).

¶25 The same is true here. Even assuming, as Farmers has argued, the superior court should have judicially estopped Rezaik from prosecuting the insurance claims against Farmers, Rezaik nevertheless prosecuted those claims and obtained a judgment against Farmers. But Farmers is not entitled to use judicial estoppel to bar the Trustee from pursuing the insurance claims and collecting the judgment—all of which are assets of the bankruptcy estate—as allowing Farmers to do so would simply "land

another blow on the victims" of Rezaik's bankruptcy fraud. Accordingly, we do not need to decide whether the superior court should have judicially estopped Rezaik from pursuing the insurance claims. The insurance claims and the judgment against Farmers are assets of the bankruptcy estate and subject to the Trustee's administration, free from Farmers' claim of judicial estoppel.

**¶26**         Accordingly, for the foregoing reasons, I agree with the majority's affirmance of the judgment against Farmers. I also agree with the majority that Farmers was entitled to summary judgment on Rezaik's punitive damages claim and its denial of the parties' competing requests for fees on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: AA